(37 Misc. Rep. 371.)

MACK v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. March, 1902.)

1. LIABILITY OF CITY—SUPERVISING ENGINEER—COMPENSATION.

Under Laws 1889, c. 375, § 13, authorizing the board of sewer commissioners of any village to employ a supervising engineer to superintend the construction of any sewer at $10 a day, a village board has no authority to employ a supervising engineer for one year and an indefinite period thereafter, "until the construction of the sewerage system is completed," and, therefore, where, 19 days after the making of such a contract, the village is annexed to the city of New York, and that city never recognizes the contract, the employé can recover nothing of the city for breach of the contract after the annexation.

2. SAME—REMOVAL OF OFFICER.

Where sewer commissioners have authority in general terms to appoint a supervising engineer, the power of removal, in the discretion of the appointing power, exists unless restrained by some provision of law.

Action by Michael J. Mack against the mayor, aldermen, and commonalty of the city of New York. Complaint dismissed.

Kellogg & Rose (L. Laflin Kellogg, of counsel), for plaintiff.
George L. Rives, Corp. Counsel (Charles A. O'Neil, of counsel), for defendant.

COCHRANE, J. This action was brought to recover damages for the breach of a contract of employment made between the plaintiff and the board of sewer commissioners of the village of Williamsbridge. The contract was made in writing on the 18th day of May, 1895, and by it the plaintiff was employed "as supervising engineer at the compensation of not less than ten dollars per day for the term of one year from the date hereof and for such further period until the construction of the sewerage system of said village is completed." By chapter 934 of the Laws of 1895, which took effect June 6th of that year, 19 days after the making of the contract, said village, with other portions of Westchester county, was annexed to the city of New York. The plaintiff performed his full duty under the contract until after the annexation act took effect, and was thereafter ready and willing to perform his duties under the contract, but was prevented from doing so by the authorities of the city of New York, who never recognized the contract as binding upon the city, nor, so far as appears, permitted any work to be done thereunder. The plaintiff's compensation for the work actually performed by him was paid by the village of Williamsbridge.

The defendant employed the plaintiff in another department of the city for the period of about one year from September, 1895, and paid him therefor $10 per day, the same compensation agreed to be paid him under the contract in question. It also appears that work on the sewer system was suspended for three or four months after the annexation act took effect, and that it was afterwards continued by the defendant herein, and that the work was not completed at the time of the commencement of this action, November 16, 1897. The plaintiff contends that he was not an officer but an employé of the village of Williamsbridge, and that after the passage of the annexation act, in 1895, the city of New York was charged with the duty of performing all the contracts entered into by the village annexed. Assuming this to be so, the question still remains, whether the board of sewer commissioners of the village of Williamsbridge had power to make such a contract as the one in question and bind their successors by their action. For, while it may be true that the defendant is liable for all contracts for which the village of Williamsbridge would have been liable, unless the contract in question was binding upon the board of sewer commissioners of the village and their successors it would not be binding on the defendant. The contract in question was made under the authority conferred by chapter 375 of the Laws of 1889, being "An act to provide for the construction of sewers in any incorporated village of the state." This act provided for five sewer commissioners, who shall be appointed for such term of office, respectively, that the term of office of one such commissioner shall expire every year, and that they shall be officers and constitute the board of sewer commissioners of the village. They were directed by the provisions of the act to cause a plan to be made of a permanent system of sewerage, and provision was made for the construction of the whole or any portion of such sewer system, subject to the approval of the

voters, to be expressed at a special election to be held as provided in the act, and the commissioners were authorized to construct such portion of said system of sewerage as they should deem for the best interests of the village, under the restrictions contained in the act. Section 13 of the act, under which the contract in question was made, provided:

"The board of sewer commissioners of any such village shall have authority to employ a supervising engineer to superintend and inspect the construction of any sewers or works connected therewith authorized to be constructed by this act, and to pay him a compensation not exceeding ten dollars per day, and such other inspectors as may be necessary and to pay them a compensation not to exceed two and one-half dollars per day each, which shall be included in their estimate of the expenses of the construction of the same, and shall be paid as a portion thereof."

It does not appear how extensive the sewerage system in question was, nor the construction of what part thereof had been authorized, nor to what extent contracts for such constructions had been made by the commissioners, nor the probable duration of time necessary for the completion thereof. The plan for the sewerage system authorized by the act in question does not require the immediate completion thereof. It is discretionary with the commissioners whether they will construct the whole or a portion thereof, and at what times, and their action is also subject to the approval of the voters, so that the complete construction of the sewerage system may be indefinitely delayed. It appears that, more than two years after the plaintiff's employment, and at the time of the commencement of this action, the work was not yet completed. By the terms of the contract in question plaintiff was employed "until the construction of the sewerage system of said village is completed." I do not think the act in question conferred on the board of sewer commissioners power to make a contract with the plaintiff extending far into the future, and covering work of an extensive character, and which might be indefinitely delayed, according to the discretion of the commissioners or the will of the voters.

The act in question authorized the sewer commissioners to employ the plaintiff, but it did not command it. The power of appointment carried with it the power of removal, in the absence of limiting words or of a fixed term. The commissioners to whom was given the right to employ the plaintiff had also the right to remove him whenever they saw fit. The rule is that where the power of appointment is conferred in general terms, and without restriction, the power of removal in the discretion and at the will of the appointing power is implied, and always exists, unless restrained and limited by some other provision of law. People v. Morton, 148 N. Y. 156, 160, 42 N. E. 538; People v. Murray, 2 App. Div. 359, 37 N. Y. Supp. 848; People v. Robb, 126 N. Y. 180, 27 N. E. 267; Gregory v. Mayor, etc., 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854; In re Finnigan, 91 Hun, 176, 36 N. Y. Supp. 331; Abrams v. Horton, 18 App. Div. 208, 45 N. Y. Supp. 887. The power of removal of the plaintiff was intrusted to the commissioners under the act in question, as well as the power of appointment.

In the case last cited a keeper of an almshouse had been appointed for three years by county superintendents of poor, and the court said:

"A due regard to the proper exercise of the powers of the county superintendents of the poor in respect to that position precludes them from making such a contract of employment as that between them and the defendant which is contained in this record. They have no authority thus to fix the duration of a public employment which the law and the legislature left indefinite, presumably for some reason. If such a contract may legally be made, it is not perceived why the term of the keeper might not be extended to thirty years as well as three. An extension of this kind, or any limitations by contract upon the power of the county superintendents to freely exercise all their official functions with respect to the keeper of the almshouse, would be opposed to public policy, and detrimental to the welfare of the community."

In Richmond Co. Gaslight Co. v. Town of Middletown, 59 N. Y. 228, a contract was made by the town whereby it was to be lighted by gas for a period of five years under the provisions of an act conferring upon the town power to make a contract for the lighting of streets. The court said:

"The first inquiry obviously is, whether this contract was valid for the five years. If it was, neither the legislature nor the board of town auditors of the defendant could do anything to impair its obligation, as that would come within the prohibition of the constitution of the United States. Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403; also cases cited in opinion of Strong, J., in Olcott v. Supervisors, 16 Wall. 678, 21 L. Ed. 382. The defendant was a municipal corporation, created by law for certain local governmental purposes, authorized to exercise such powers only as were conferred upon it by law. Prior to the passage of the act of 1865, it had no power to cause any of the streets of the town to be lighted with gas, or in any other way. By that act such power was conferred upon the defendant. For what term? The learned counsel for the appellant insists for the term of five years at least, for which the contract was entered into by the plaintiff with the town auditors to furnish the gas, and that during this time the legislature had no power to relieve the town, or any part of it, from the expense of lighting all the streets embraced in the contract, whatever the necessity for such relief might be. If the board of town auditors could deprive the legislature of this power for 5 years, by entering into a contract with the plaintiff for that time, it might for 100 years, by contracting for that period. I think it entirely clear that no such power was conferred by the act upon the town auditors. The power so conferred was like the other powers conferred upon the officers of this and the other towns of the state, subject to modification or repeal by subsequent legislation, and that the town auditors could not, by any contract, prevent or at all control the action of the legislature in this respect."

The plaintiff relies on Potter v. City of New York, 59 App. Div. 70, 68 N. Y. Supp. 1039, and Bell v. City of New York, 46 App. Div. 195, 61 N. Y. Supp. 709. The views here expressed are not in conflict with either of those cases. In the first case it is expressly said in the opinion, "No question is raised as to the power of the board of sewer commissioners under the statute to make this contract with the plaintiff." The same board which employed the plaintiff in that case discharged him, and the only question there considered was as to whether, under the terms of the contract, which essentially differed from the contract in this case, they had a right to do so. In Bell v. City of New York, supra, the defendant expressly ratified the previous contract of the village, and allowed

the plaintiff to perform the services thereunder during the time named, and she fully performed them. This case is distinguished in Connelly v. Commissioners, 32 Misc. Rep. 489, 66 N. Y. Supp. 194, the reasoning of the learned judge in which case fully commends itself to my judgment. In Ford v. City of New York, 26 Misc. Rep. 292, 56 N. Y. Supp. 4, an action brought under the same form of contract, made with the same board of sewer commissioners, the same conclusion was reached as is reached in this case.

It follows that the board of sewer commissioners of the village of Williamsbridge, having no power to make the contract in question with the plaintiff and to bind their successors thereby, the defendant herein did not become liable in refusing to carry out the same, and the complaint should be dismissed.

Complaint dismissed.